# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BUFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV2349MLM |
| | ) | |
| JAMES PURKETT, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the court on First Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner John Buff ("Petitioner"). Doc. 14. Respondent filed a Response to Order to Show Cause together with Exhibits. Doc. 16. Petitioner filed Traverses. Doc. 21, Doc. 22. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## BACKGROUND

On July 23, 1998, Petitioner was charged by indictment as follows: Count I, the felony of first-degree assault in that on March 14, 1997, in the City of St. Louis, he attempted to kill or cause serious physical injury to Joseph Sickinger by shooting him and, Count II, armed criminal action in that he committed the felony described in Count I by, with, and through the use, assistance and aid of a deadly weapon. Resp. Ex. B at 8-9. Petitioner was charged as a prior and persistent offender. Resp. Ex. B at 9.

On August 2, 1999, the Petitioner's case proceeded to trial before a jury. The victim, Joe Sickinger, testified as did Shannon Wingfield, who had broken off a relationship with the victim. Resp. Ex. A at 253-54, 349-50. Ms. Wingfield testified that on the evening of March 13, 1997, she

drove Petitioner to a bar; that Petitioner's long-time friend, David Freeman, was there; that Petitioner, Ms. Wingfield, and Mr. Freeman left the bar together around 1:00 a.m.; that Ms. Wingfield was driving; that Petitioner told her to drive by Mr. Sickinger's home; that Petitioner was upset about Mr. Sickinger; that Petitioner instructed Ms. Wingfield to call Mr. Sickinger to see if he was home; that she did so; that, although Mr. Sickinger answered, Ms. Wingfield told Petitioner that he was not home; that Petitioner proceeded to get out of the car with a gun; that Petitioner told Mr. Freeman to get in the front seat and Ms. Wingfield to drive around the corner and wait for him; and that both complied with these instructions. Resp. Ex. A at 350-63.

Mr. Sickinger, the victim, testified that he had gone to bed at around 12:00 a.m.; that he was awakened at around 1:05 a.m. but the caller hung up; that a few minutes later he heard a knock on the door and the door bell ring; that he looked outside but did not see anyone; that he went back to bed; that he again heard a knock and the door bell; that he could not see anybody; that he heard a knock and the door bell a third time; that he went to see who it was, thinking it was children playing a prank; that he saw a man whom he had never seen before and whom he identified as Petitioner; that Petitioner was holding a small, black, semiautomatic pistol in his right hand against his thigh; that Mr. Sickinger asked what Petitioner wanted; that Petitioner said he wanted to talk to Mr. Sickinger; that Mr. Sickinger said, "not with a gun in your hand" and took off running; that Petitioner chased Mr. Sickinger; that as Petitioner chased Mr. Sickinger down an alley Petitioner fired one shot from his gun; that as he was being chased Mr. Sickinger asked Petitioner what he wanted; that Petitioner said, "you know Shannon"; that Mr. Sickinger stopped and faced Petitioner who was twenty to thirty feet away and still holding the gun in his hand; that Petitioner said he wanted to talk to Mr. Sickinger and put the gun in his pocket; that Mr. Sickinger said he did not think so and began running again; that Petitioner fired another shot at Mr. Sickinger which struck him in the right calf and passed through

his leg; that Mr. Sickinger continued running until he realized that Petitioner was no longer chasing him; that after knocking on neighbors' doors he passed out; and that he was awakened by police and taken to the hospital. Resp. Ex. A at 240-42, 243-45, 247-63. Mr. Sickinger testified that he learned Petitioner's name from Ms. Wingfield's mother's boyfriend; that he provided this information to the police; and that he subsequently identified Petitioner in a photographic array as the person who shot him. Resp. Ex. A at 264-67. Several witnesses testified on Petitioner's behalf, including Mr. Freeman who also testified for the defense, denying any involvement in the shooting. Resp. Ex. A at 473. Ms. Wingfield testified that eventually Petitioner told her that he chased Mr. Sickinger and shot him and that she continued to date Petitioner after the shooting. Resp. Ex. A at 372-73.

As stated by the Missouri appellate court:

> The State rested its case on August 3, 1999, and the defense began presenting its case that same day. On August 4, 1999, the last day of trial, [Petitioner] failed to appear. The trial court decided to continue despite [Petitioner's] absence, denied defense counsel's request for a continuance, and issued a *capias* warrant for [Petitioner]. The jury returned a guilty verdict on both the assault and armed criminal action charges. Approximately six weeks later, authorities apprehended [Petitioner]. [Petitioner's] sentencing was held on January 28, 2000. The trial court sentenced [Petitioner] to serve an imprisonment of thirty years on the assault count and thirty years on the armed criminal action count, both terms to run concurrently.

Resp. Ex. I at 2.

As further stated by the Missouri appellate court, on August 4, 1999, the date Petitioner failed to appear, the following exchange took place between Petitioner's attorney and the court:

> The Court: The record should reflect that it is about 9:10 or 9:12 A.M. and the defendant is nowhere to be seen. [Counsel], I believe that was one of the topics you wanted to talk about.
>
> [Counsel]: The court has given me or informed me of its intention to proceed in absentia of the defendant. I would object to proceeding without the defendant as it is obviously an integral phase of the trial and he has a right to be present. A capias has been issued. I would ask that the proceedings be halted at this particular time.

The Court: As you indicated the court has indicated an intent to proceed in absentia. Mr. Buff was here during the beginning of the trial. He is on bond. It is his responsibility to be here. The court can only assume at this point that Mr. Buff has voluntarily chosen to absent himself from these proceedings so the Court does intend to proceed in absentia. So your motion is overruled.

Resp. Ex. E at 1-2.

The Missouri appellate court also said that the trial court "noted that it had based its decision on information given by the prosecutor in conference that [Petitioner] was at his girlfriends the night before and slipped out sometime during the night, taking his belongings." Resp. Ex. E at 2.

Petitioner filed a direct appeal of the judgment against him. Resp. Ex. C. Petitioner's direct appeal was dismissed by the Missouri appellate court on December 26, 2000, based on the "escape rule."[1] State v. Buff, 34 S.W.3d 856 (Mo. Ct. App. 2000); Resp. Ex. E. Petitioner did not file for transfer to the Missouri Supreme Court.

Petitioner filed a pro se Rule 29.15 post-conviction relief motion on May 2, 2001. Resp. Ex. F at 1-30. On August 28, 2001, the motion court denied Petitioner's pro se Rule 29.15 motion. Resp. Ex. F at 2. Petitioner appealed the decision of the motion court. Resp. Ex. G. On September 10, 2002, the Missouri appellate court affirmed the judgment of the motion court. Resp. Ex. I. Petitioner filed for transfer to the Missouri Supreme Court which was denied on April 1, 2003. Resp. Ex. J. The mandate issued on April 9, 2003.

Petitioner filed a Rule 91 habeas petition in the Circuit Court of Washington County, Missouri, on April 8, 2004. Resp. Ex. K. In this Rule 91 habeas petition Petitioner alleged ineffective

---

[1]     "The escape rule operates to deny the right of appeal to a defendant who escapes justice." State v. Troupe, 891 S.W.2d 809 (Mo. banc 1995). See also Crawley v. State, 155 S.W.3d 836, 837 (Mo. App. 2005). The relevant inquiry in applying the escape rule is whether the escape adversely affects the criminal justice system. Troupe, 891 S.W.2d at 811; Crawley, 155 S.W.3d at 837. If it so adversely affects the criminal justice system, dismissing the appeal or motion for post-conviction relief is appropriate. Troupe, 891 S.W.2d at 811.

assistance of trial counsel for failing to investigate and/or call witnesses at trial, for failing to investigate and object to irregularities in regard to a photo identification of Petitioner at trial, and for not requesting that the trial court issue a subpoena. Petitioner also alleged that the trial court erred by not issuing a subpoena. Resp. Ex. K. By Order and Judgment dated September 7, 2004, the Circuit Court of Washington County held that the escape rule barred Petitioner's claims and, in the alternative, that two of Petitioner's ineffective assistance of counsel claims were not cognizable in habeas corpus proceedings as he raised them in his post-conviction relief motion; that Petitioner had procedurally defaulted the remaining grounds; and that Petitioner had not shown a jurisdictional defect or cause, cause and prejudice, or manifest injustice necessary to excuse his procedural default. Resp. Ex. L. Petitioner appealed the September 7, 2004, decision of the Circuit Court of Washington County to the Missouri appellate court, which held on January 25, 2005, that it lacked jurisdiction to entertain an appeal as an appeal does not lie for the denial of a habeas corpus petition. Resp. Ex. M.

On March 4, 2005, Petitioner filed a Rule 91 habeas corpus petition in the Circuit Court of Mississippi County, Missouri. Resp. Ex. N. In this Rule 91 habeas petition Petitioner alleged that newly discovered evidence showed that another person was the perpetrator of the crime of which Petitioner was convicted; that the exclusion of sworn testimony of material witnesses deprived Petitioner of a fair trial; that the State relied on fraudulent evidence regarding a photographic lineup and elicited perjured testimony from a detective and the victim; that the trial court lacked jurisdiction to sentence Petitioner as it failed to grant him allocution; and that application of the escape rule to bar his claim of factual innocence "serves no logical judicial interest," Resp. Ex. N at 2. On April 16, 2005, the Circuit Court of Mississippi County denied Petitioner's Rule 91 habeas corpus petition without comment. Resp. Ex. O. Petitioner filed an appeal with the Missouri appellate court and by

Order dated July 25, 2005, the appellate court dismissed Petitioner's appeal for lack of appellate jurisdiction. Resp. Ex. P. Petitioner also filed a Rule 91 habeas corpus petition with the Missouri appellate court on May 25, 2005, raising the same issues which he raised in the Mississippi County habeas petition. Resp. Ex. Q. The Missouri appellate court issued an Order on June 30, 2005, dismissing Petitioner's appeal of May 25, 2005 for lack of jurisdiction. Resp. Ex. R.

On August 17, 2005, Petitioner filed a Rule 91 habeas corpus petition in the Circuit Court of St. Francois County, Missouri. Resp. Ex. S. In this habeas petition Petitioner raised the same issues which he raised in his habeas petition in Mississippi County. The Circuit Court of St. Francois County held that Petitioner's claim of actual innocence must fail and that the remainder of his claims were barred by the escape rule. Resp. Ex. T. On about July 25, 2005, Petitioner filed a Rule 91 habeas petition with the Missouri appellate court again alleging the same issues which he raised in both his St. Francois County and Mississippi County habeas petitions. Resp. Ex. U.

Petitioner filed a § 2254 Petition on December 13, 2005. Petitioner raises the following issues in his § 2254 Petition:

> **(1)** Petitioner was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed and refused to conduct a reasonable investigation of Petitioner's alibi and failed to interview Davette Donelson and Prentice Phillips; [Doc. 14 at 13]
>
> **(2)** Petitioner's conviction in the face of evidence of his actual innocence provided by Jeffrey Amick, a newly discovered witness, violates Petitioner's right to due process; [Doc. 14 at 17-18]
>
> **(3)** Petitioner was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed to interview and call eyewitness Lynette Siefliesch; [Doc. 14 at 13]
>
> **(4)** Petitioner was denied his rights under the Fifth and Fourteenth Amendment due to misconduct of the prosecution and its eyewitnesses in knowingly presenting fraudulent documents and perjured testimony in the form of a photographic array; [Doc. 14 at 24]

**(5)** Petitioner was denied his right to due process and his Sixth Amendment right to effective assistance of counsel because the trial court failed to insure that Petitioner was represented by counsel at sentencing and "further failed to grant allocution to Petitioner at sentencing." [Doc. 14 at 27].

## II.
## LEGAL FRAMEWORK FOR EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d

1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been

discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly

presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in <u>Duncan</u>, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

<u>Duncan</u>, 533 U.S. at 179-80.

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." <u>Clark v. Caspari</u>, 274 F.3d 507, 510 (8th Cir. 2001) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). In <u>Randolph v. Kemna</u>, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in <u>Randolph</u>, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. <u>Id.</u> at 404-405.

The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). The appeal of a post-conviction relief motion remains pending until the appellate court issues its mandate. However, for Missouri prisoners the statute does not commence to run until the appellate court issues the mandate. Payne v. Kemna, 451 F3d 938 (8th Cir.2006) (holding that post-conviction proceedings in Missouri are not final until issuance of the mandate); Canaday v. Moore, 2005 WL 1278523, at *2 (W.D. Mo. May 27, 2005) (citing 299 F.3d 981, 982-83 (8th Cir. 2002). For a Missouri defendant, " judgment in a criminal case [ ] becomes final for purposes of appeal when sentence is entered, State v. Lynch, 679 S.W.2d 858, 860 (Mo. banc 1984), and an appeal must be filed within

ten days thereafter. State ex rel. Wagner v. Ruddy, 582 S.W.2d 692, 693 (Mo. banc 1979). The same time limit applies to those cases where an appeal is permitted from a guilty plea. State v. Werbin, 597 S.W.2d 663, 664 (Mo. App.1980)." State v. Harris, 863 S.W. 699 (Mo. Ct. App. 1993).

United States Supreme Court Rule 13 provides that "a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment." A state court conviction becomes final 90 days after the denial of discretionary review by the highest state court. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000) ("[O]ne-year limitations period for filing habeas petition was tolled while petitioner sought post-conviction relief in state court, from date when petitioner filed his motion for post-conviction relief up until date when Missouri Court of Appeals affirmed the denial of post-conviction relief."). The Eighth Circuit explained, in Williams, 299 F.3d at 983, as follows:

> We stated in [Peterson v. Gammon, 200 F.3d 1202 (8th Cir.2000)] that a post-conviction application remains "pending" for the entire period during which a notice of appeal "would be timely, assuming such a notice was in fact filed." See id. at 1205. ... Peterson did not say that the statute of limitations was tolled only if the petitioner filed a timely appeal; it said that it was tolled if he or she did so. Although we have not answered the question directly, those circuit courts that have addressed it have concluded that the application is "pending" (and thus the limitations period is tolled) during the appeal period, even if the petitioner does not appeal. See Gibson v. Klinger, 232 F.3d 799, 803-04 & n. 1 (10th Cir.2000); Swartz v. Meyers, 204 F.3d 417, 420-24 (3d Cir.2000).

Recently, in Pierson v. Dormire, 2007 WL 984104, at *7 (8th Cir. Apr. 4, 2007), the Eighth Circuit clarified that were a Missouri prisoner files for transfer to the Missouri Supreme Court "there is no question he [is] entitled to the expiration of the time allotted for filing a petition for a writ of certiorari to the United States Supreme Court." (citing Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998)). When the State proceedings have ended at the Missouri appellate court because the

prisoner did not file for transfer, his "'judgment becomes final within the meaning of §2244(d)(1)(A) no earlier than ... 90 days after his conviction was affirmed on direct appeal. The <u>Nichols</u> case[2] [] grants [a habeas petitioner] the extra ninety-days'" afforded those petitioner's who file for transfer to the Missouri Supreme Court.[3]

In regard to equitable tolling of the statute of limitations, the Eighth Circuit held as follows in <u>Jihad v. Hvass</u>, 267 F.3d 803, 804 (8th Cir. 2001):

> It is settled in this circuit (and most others) that the statute of limitations in § 2244(d) is subject to the doctrine of equitable tolling. <u>See</u> <u>Gassler v. Bruton</u>, 255 F.3d 492, 495 (8th Cir.2001). However, equitable tolling affords the otherwise time-barred petitioner an exceedingly narrow window of relief: Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time. Further, equitable tolling may be appropriate when conduct of the defendant has lulled the plaintiff into inaction. <u>Kreutzer v. Bowersox</u>, 231 F.3d 460, 463 (8th Cir.2000) (citations omitted), <u>cert. denied</u>, --- U.S. ----, 122 S.Ct. 145, --- L.Ed.2d ---- (2001). ...

> There is no constitutional right to counsel in seeking state post-conviction relief, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and no statutory right to counsel under Minnesota law, see Minn.Stat. § 590.05 (2000). Thus, an unsuccessful search for counsel was not an extraordinary circumstance warranting equitable tolling. <u>See</u> <u>Smith v. McGinnis</u>, 208 F.3d 13, 18 (2d Cir.), <u>cert. denied</u>, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000); <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir.), <u>cert. denied</u>, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999); cf. <u>Paige v. United States</u>, 171 F.3d 559, 561 (8th Cir.1999). Likewise, lack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling. <u>See</u> <u>Gassler</u>, 255 F.3d at 495.

The United States Supreme Court has addressed the issue of equitable tolling in <u>Pace v. DiGuglielmo</u>, 125 S.Ct. 1807, 1814 (2005). In <u>Pace</u>, the Court held that a state habeas petitioner was not entitled to equitable tolling for the time during which his untimely post-conviction relief petition

---

[2]     <u>Nichols v. Bowersox</u>, 172 F.3d 1068 (8th Cir. 1999).

[3]     The court in <u>Pierson v. Dormire</u>, 2007 WL 984104, at *7 (8th Cir. Apr. 4, 2007), acknowledged the spilt in the Circuit Courts regarding the allotment of the ninety-day period.

was pending in the state courts because he did not diligently pursue his rights under state procedure. The court further set forth the requirements for equitable tolling as follows: (1) the petitioner diligently pursued his rights and (2) "some extraordinary circumstances stood in his way." See also Walker v. Larry Norris, 436 F.3d 1026 (8th Cir. 2006).

Missouri Rule 91 provides that a person restrained of liberty within Missouri may seek relief pursuant to habeas corpus petition and specifically states that it "applies in all particulars not provided for by the foregoing provisions." Where a criminal defendant fails to timely bring a claim pursuant to state appellate or post-conviction procedure, there is authority that an issue unknown or not reasonably discoverable to the inmate during the period in which he could have filed for relief under these procedures can provide the basis for habeas corpus relief under Rule 91. Brown v. Gammon, 947 S.W.2d 437, 440 (Mo. Ct. App. 1997) (citing Merriweather v. Grandison, 904 S.W.2d 485, 489 (Mo. Ct. App.1995); Walls v. Delo, 755 F. Supp. 873, 875 (E.D. Mo.1991)).

Also, under Missouri law "relief available under a writ of habeas corpus has traditionally been very limited, and courts are not required to issue this extraordinary writ where other remedies are adequate and available." Covey v. Moore, 72 S.W.3d 204, 209 (Mo. Ct. App. 2002) (quoting Clay v. Dormire, 37 S.W.3d 214, 217 (Mo. 2000) (en banc)). In Brown v. State, 66 S.W.3d 721, 726 (Mo. 2002) (en banc), the Missouri Supreme Court adopted the "cause and prejudice" standard for determining when a habeas petition is procedurally barred. Covey, 72 S.W.3d at 210. The Missouri Supreme Court stated in Brown that "habeas corpus . . . provides the proper avenue for relief in those limited circumstances in which the petitioner asserts a claim that is of the type" which is properly raised through post-conviction relief proceedings, but that is time-barred under applicable rules, "if the petitioner can meet the 'cause and prejudice' standard set out in State ex rel. Nixon v. Jaynes, [63 S.W.3d 210 (Mo. 2001) (en banc)]." 66 S.W.3d at 723. See also State ex rel.Simmons

v. White, 866 S.W.2d 443, 446 (Mo. 1993) ("Habeas corpus may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies *only* to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results.") (emphasis in original). Habeas corpus may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies only to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results. Thus, a Missouri defendant who fails to file a direct appeal or a State post-conviction relief motion procedurally defaults claims that his conviction and/or sentence were in violation of the Constitution. See Simmons, 866 S.W.2d at 446 ("This state has established a procedural system that provides a timely review of criminal convictions. It allows for direct appeal and for post-conviction review of certain constitutional protections pursuant to Rules 29.15 and 24.035. ... [H]abeas corpus, however, was [not] designed for duplicative and unending challenges to the finality of a judgment.").

Also, the Eighth Circuit held in Preston v. Delo, 100 F.3d 596, 600 (8th Cir. 1996), that a "Rule 91 petition 'may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies *only* to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results.'" (quoting Simmons, 866 S.W.2d at 446). "[N]ewly discovered evidence can be basis for Rule 91 petition." Id. (citing Wilson v. State, 813 S.W.2d 833, 834-35 (Mo.1991) (en banc)).

Where a Missouri prisoner fails to raise issues in his direct appeal or in post-conviction relief proceedings, he cannot base federal review pursuant to § 2254 on his filing a state petition for writ of habeas corpus which state petition is filed improperly pursuant to Missouri law. See id. The Eighth Circuit has explained as follows that:

> Byrd v. Delo, 942 F.2d 1226 (8th Cir.1991), ... involv[ed] the Missouri Supreme Court's summary denial of a Rule 91 habeas petition with the same language as used in this case. We stated, "[a]fter Coleman [v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ], there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal issue," because such a denial rests on the Missouri procedural rule that Rule 91 cannot be used to raise claims that could have been raised on direct appeal or in a timely motion for post-conviction relief. Byrd, 942 F.2d at 1232. Both before and after Simmons, we have consistently followed Byrd 's rule regarding unexplained denials of Rule 91 petitions. See Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir.1996); Charron v. Gammon, 69 F.3d 851, 857 (8th Cir.1995), cert. denied, 518 U.S. 1009, 116 S.Ct. 2533, 135 L.Ed.2d 1056 (1996); Anderson v. White, 32 F.3d 320, 321 n.2 (8th Cir.1994); Battle v. Delo, 19 F.3d 1547, 1561 (8th Cir.1994) (subsequent history omitted); Blair v. Armontrout, 976 F.2d 1130, 1136 (8th Cir.1992), cert. denied, 508 U.S. 916, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993).

Id.

Where a Rule 91 proceeding is initiated after the 1-year statutory period applicable to federal habeas petitions has expired, the filing of a Rule 91 petition is not relevant to a determination of whether the statute has expired. See e.g., Gray v. Gammon, 283 F.3d 917 (8th Cir. 2002) (holding that the 1-year statute of limitations was not tolled by an application in state court for post-conviction relief where the application was not pending during the relevant time period).

# III.
## TIMELINESS, EXHAUSTION, AND PROCEDURAL DEFAULT ANALYSIS

### A.   Timeliness:

Respondent contends that Petitioner's § 2254 Petition filed on December 13, 2005, is untimely; that Petitioner should not be credited ninety days for the period during which he could have filed for certiorari with the United States Supreme Court in regard to his direct appeal; that

Petitioner's conviction became final on January 10, 2001, which is fifteen days after the Missouri appellate court denied his direct appeal; that the statute of limitations commenced to run on January 10, 2001; that the statute of limitations was tolled from the time Petitioner filed his Rule 29.15 motion until the date the State appellate court issued its mandate on April 9, 2003; and that, therefore, Petitioner's § 2254 Petition was due no later than December 18, 2003.

Petitioner does not dispute Respondent's calculations and Respondent's assertion that, "absent tolling, equitable or otherwise," Petitioner's § 2254 Petition was due by December 18, 2003. Petitioner contends, however, that he did not learn of the decision of the Missouri appellate court in regard to his direct appeal until February 1, 2001, which is thirty five days after the decision; that by letter dated February 1, 2001, appellate counsel did not mention filing for transfer to the Missouri Supreme Court, did not explain "what impact the failure to seek review by the [S]tate's highest court would have on seeking a writ of certiorari to the United States Supreme Court nor did she explain how to failure to seek that review might impact the timing of the filing of a Petition for Writ of Habeas Corpus in federal court"; that appellate counsel "stressed the importance of filing" a Rule 29.15 motion upon issuance of the mandate; that, by letter dated February 14, 2001, counsel informed Petitioner that the mandate issued in his direct appeal on February 8, 2001; that Petitioner's appellate counsel's performance lacked diligence because counsel failed to seek transfer to the Missouri Supreme Court; that abandonment by direct appeal counsel affected his ability to file his § 2254 Petition in a timely manner; and that the statute of limitations should, therefore, be equitably tolled and his § 2254 Petition should be considered by this court. Doc. 21 at 2-6; Doc. 24 at 4-11.

Petitioner also argues that he "missed the filing date" for filing his § 2254 Petition because he had at least one action pending in the State courts; because he was represented by counsel in those actions; because this counsel had mental health issues; and because this counsel no longer practices

law and "is unavailable to testify to these allegations." Doc. 24 at 2-3. Petitioner further argues that his § 2254 Petition should be considered timely because he has submitted a "persuasive claim" of actual innocence." Doc. 24 at 11-13. In support of his claims of actual innocence Petitioner has submitted affidavits of two "witnesses (Davette Donelson and Prentice Phillips) stating that Petitioner was with them in downtown St. Louis on the evening Joseph Sick[i]nger was shot." Doc. 24 at 11. Petitioner acknowledges that Donelson's and Phillips affidavits "do not alone present a claim of Petitioner's actual innocence," but that the affidavit of Jeffrey Amick does. Doc. 24 at 12.

First, the court notes that contrary to Respondent's contention, the 1-year statute of limitations did not run for the ninety-day period Petitioner could have filed a petition for certiorari with the United States Supreme Court. See Pierson, 2007 WL 984104, at *7. In any case, Petitioner did not file his Rule 29.15 motion until May 2, 2001, which is 125 days after the appellate court denied Petitioner's direct appeal. The court will assume, arguendo, that the 1-year statute was equitably tolled for the thirty-five days Petitioner allegedly did not know that his appeal was denied. As such, the statute of limitations did not run for the entire period between the Missouri appellate court's dismissal of Petitioner's direct appeal and the date upon which he filed his Rule 29.15 motion. Thus, the statute of limitations did not commence to run until April 9, 2003, the date the mandate issued in the appeal of Petitioner's Rule 29.15 motion. See Payne, 451 F.3d at 938. Petitioner's § 2254 Petition, therefore, was due in federal court no later than April 9, 2004. He, however, filed his original § 2254 Petition on December 13, 2005.

Second, although Petitioner's § 2254 Petition was due in federal court no later than April 9, 2004, Petitioner did not file his first Rule 91 habeas petition until April 8, 2004, one day prior to the expiration of the statute of limitations. As such, even assuming, arguendo, that the pendency of Petitioner's Rule 91 habeas petitions tolled the statute of limitations, Petitioner's § 2254 Petition is

untimely as more than one day elapsed between the denial of each of his Rule 91 petitions and his filing a subsequent Rule 91 petition. For example, the Missouri appellate court dismissed an appeal of one of Petitioner's Rule 91 petitions on January 25, 2005, and Petitioner filed his next Rule 91 petition on March 4, 2005.

Third, as stated above, only a Rule 91 motion which is properly filed according to State law can toll the statute of limitations applicable to § 2254 petitions. § 22244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Petitioner's April 2004 habeas petition raised claims which were barred by the escape rule, and either not cognizable pursuant to Rule 91, and/or raised claims which were procedurally defaulted according to State law; Petitioner's September 2004 appeal regarding the April 2004 habeas petition was not properly filed according to State procedure; Petitioner's March 2005 habeas petition was denied without comment and, pursuant to <u>Preston</u>, 100 F.3d at 600, this court must assume that it was not properly filed pursuant to Missouri law; the appeal of Petitioner's April 2005 habeas petition was dismissed for lack of jurisdiction; Petitioner's May 2005 habeas petition was dismissed for lack of jurisdiction; and Petitioner's August 2005 habeas petition was dismissed based on the escape rule and because Petitioner's claim of actual innocence was without merit. Thus, none of none of Petitioner's aforementioned Rule 91 habeas petitions were properly filed according to Missouri law. As such, the 1-year statute of limitations was not tolled based on the pendency of Petitioner's Rule 91 habeas petitions. <u>See</u> <u>Williams</u>, 299 F.3d at 982; <u>Byrd</u>, 942 F.2d at 1232. To the extent that Petitioner's July 25, 2005 Rule 91 habeas petition is still pending, the 1-year statute expired prior to his filing that petition. The July 2005 Rule 91 habeas petition, therefore, cannot toll the 1-year period. <u>See</u> <u>Gray</u>, 283 F.3d 917.

Fourth, to the extent that Petitioner contends that appellate counsel's alleged lack of diligence for failing to seek transfer to the Missouri Supreme Court should justify equitable tolling, this argument is without merit. Indeed, Petitioner could have properly raised any allegations of ineffective assistance of appellate counsel in his Rule 29.15 motion. Moreover, upon addressing an argument by a habeas petitioner that the statute of limitations should be tolled based on ineffective assistance of counsel, the Eighth Circuit has held that "[i]neffective assistance of counsel generally does not warrant equitable tolling." Walker v. Norris, 436 F.3d 1026, 1033 (8th Cir. 2006) (citing Beery v. Ault, 312 F.3d 948, 950 (8th Cir.2002). Where a habeas petitioner's "lack of diligence, not extraordinary circumstances," caused the statute to run "[e]quitable tolling is not warranted." Id. See also Neuendorf v. Graves, 110 F. Supp.2d 1144, 1153 (N.D. Iowa 2000) (holding that a petitioner alleging that the actions of others prevented his timely filing a cause of action must show that he "was so inhibited" by the action that he was "unable to file and state a legal cause of action before the limitation period expired"). Petitioner has not shown that the actions of his counsel prevented him from timely filing his § 2254 Petition. Rather, it was Petitioner's lack of due diligence that caused the statute to run. See Walker, 436 F.3d at 1033.

Moreover, Petitioner's reliance on O'Sullivan v. Boerckel, 526 U.S. 838 (1999), in support of his argument that ineffective assistance of appellate counsel should toll the statute of limitations is contorted and misplaced. While O'Sullivan holds that a state prisoner must present his or her claims to a state's supreme court, even where that review is discretionary, the Eighth Circuit holds that "transfer from the court of appeals to [the Missouri Supreme Court] is an extraordinary remedy that is not part of the standard review process for purposes of federal habeas review." Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002). As such, Missouri prisoners are not required to seek transfer to the Missouri Supreme Court in order to exhaust their State remedies. Id. at 405.

Constitutionally ineffective assistance of counsel is established where "counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment and "counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The failure of Petitioner's appellate counsel to seek transfer to the Missouri Supreme Court, therefore, can in no way be constitutionally ineffective assistance of counsel or deficient under any standard.

Fifth, to the extent Petitioner contends that a letter from Judge David dated July 30, 2001,[4] justifies equitable tolling, this letter does not suggest that conditions or extraordinary circumstances beyond Petitioner's control made it impossible for him to timely file his § 2254 Petition or that he was lulled into inaction by the state. See Jihad, 267 F.3d at 804. In particular, Petitioner contends Judge David's July 30, 2001 letter establishes that Petitioner could reasonably believe that the State circuit court would "restore his direct appeal" and/or "resurrect his defaulted claims." Judge David's letter, however, merely states that the judge was unsure of whether he should appoint counsel to represent Petitioner on his post-conviction relief claims which where not precluded by the escape rule. The letter in no way suggests that Plaintiff could reasonably believe that the State circuit court would "restore his direct appeal" and/or "resurrect his defaulted claims." The court finds, therefore, that Petitioner has not suggested conduct, circumstances, or conditions beyond his control which made

---

[4] In this letter, addressed to "Doug," Judge David states:

I looked at your Escape Rule Notes & it appears that the vast majority of Movant's claims precede appeal. I have not yet appointed counsel & don't know whether I should dismiss those issues precluded by the escape rule (if we're sure they are) and appoint counsel for the rest (in the same document) or whether I should just appoint counsel & then wait for the amended motion. What do you think? I kind of hate having the PD do a lot of work on issues that are clearly (if they are) precluded. Let me know.

Doc. 21, Ex. FF.

it impossible for him to file a timely § 2254 petition nor has he suggested conduct which lulled him in into inaction. As such, the court finds that equitable tolling is not applicable in Petitioner's case. See id.

As found above, the 1-year statute of limitations commenced to run on April 9, 2003, which is the date the appellate court issued its mandate on the appeal of Petitioner's Rule 29.15 motion; the statute of limitations was not tolled during the period Petitioner's Rule 91 petitions and/or appeals were pending; and Petitioner has not stated a basis upon which equitable tolling should apply. See Payne, 451 F.3d at 938; Walker, 436 F.3d at 1033; Jihad, 267 F.3d at 804. Because Petitioner did not file his § 2254 Petition until December 13, 2005, the court further finds that Petitioner's § 2254 Petition is untimely by any calculation.

**B.    Actual Innocence:**

Petitioner argues that the court should consider his untimely § 2254 Petition because he is actually innocent. In support of his claim of actual innocence Petitioner submits the affidavit of Jeffrey Amick. The Circuit Court of St. Francios County addressed Petitioner's claim of innocence based on Amick's affidavit and held as follows:

> The facts alleged in this case do not demonstrate "clear and convincing evidence" that John Buff is innocent. In the case at bar, petitioner presents as "newly discovered evidence" an affidavit from Jeffrey Amick, an inmate at the Missouri Department of Corrections. Amick states that on the night of the assault, he was with Mike Digar, Shannon Wingfield, and David Freeman at Sweet Pea's bar. Amick states that Wingfield and Freeman became upset at about 12:30 A.M., that Wingfield was upset because her ex-boyfriend owed her money, and that Digar suggested that everyone come to his house. Amick went with Freeman and Wingfield in Freeman's car. Amick then states that Wingfield attempted to telephone someone, and Freeman got out of the car, pulled out, Amick heard gunshots, and Freeman jumped into the vehicle out of breath. Freeman then dropped Amick off at Amick's home, warned him to keep his mouth shut, and asked him to hold the gun.

Amick's affidavit does not show "clear and convincing evidence" that John Buff is actually innocent. The only thing that Amick's affidavit may establish is that a juror would have to decide between Amick's story and Shannon Wingfield's testimony, which states that Wingfield, petitioner, and David Freeman left the bar together, ..., that petitioner requested that Wingfield drive to the victim's home, ..., that Wingfield called the victim, ..., that petitioner had a gun, ..., that petitioner exited the car and told Wingfield to drive around the corner and wait, ..., that Wingfield heard gunshots, ..., that Wingfield dropped Freeman off at his house, ..., and that petitioner Buff, prior to leaving the car at his friend's house, put the gun to Wingfield's head and told her that he would kill her if she did not cooperate, ... . Amick's affidavit also does not address the fact that the victim, Joseph Sickinger, identified petitioner Buff as the person who shot him, ... . Amick's affidavit thus only shows that a reasonable juror may not have convicted petitioner in light of Amick's testimony and that Amick's testimony may have provided reasonable doubt. The affidavit does not demonstrate "clear and convincing" evidence that Buff did not commit his crimes because the affidavit does not immediately "tip the scales" in favor of innocence when compared to the other evidence presented at trial, especially the victim's identification of Buff as the shooter. The Court finds that Buff's freestanding claim of actual innocence must fail.

Resp. Ex. T at 4-5.

Even assuming, arguendo, that Amick's affidavit is properly before this court for consideration, Amick's affidavit states on its face that it was "taken on behalf of John Buff." Resp. Ex. V. Further, the affidavit is dated June 19, 2003. Assuming that Petitioner learned of his innocence in June 2003 or soon thereafter, Petitioner did not file his § 2254 Petition until December 13, 2005.

Petitioner also states in his Traverse that he has submitted affidavits from two individuals other than Amick. These affidavits, however, do not appear in the court's file.

In Neundendorf v. Graves, 110 F. Supp.2d 1144, 1155 (N.D. Iowa 2000), the court considered whether "'actual innocence' avoids the time limitations imposed by Congress in § 2244(d)(1). The court also considered whether the habeas petitioner in that case presented new evidence "sufficient to open such a gateway around the time limitations." Id. The court noted that the Eighth Circuit has

not expressly ruled on whether actual innocence can avoid the statute of limitations although it has held that it can overcome procedural default. Id. at 1155-56 (citing Holt v. Bowersox, 191 F.3d 970, 974 (8th Cir.1999) ;Lee v. Kemna, 213 F.3d 1037, 1038 (8th Cir.2000); Mansfield v. Dormire, 202 F.3d 1018, 1024 (8th Cir.2000); Johnson v. Norris, 170 F.3d 816, 817 (8th Cir.1999)). The court concluded in Neudenhorf that reasonable conclusion from these decisions is that "'actual innocence' can overcome the procedural default of timeliness requirements, even as timeliness is now codified under the AEDPA in 28 U.S.C. § 2244(d)(1)." Id. at 1156. However, the court noted that only if the habeas petitioner made a sufficient showing of actual innocence would the gateway to federal habeas review be opened. Id. at 1158. In this regard the court held:

> [A]s the Eighth Circuit Court of Appeals recently explained, the claim [of actual innocence] requires satisfaction of two requirements: "An actual innocence claim requires [the petitioner] to show [1] '"new reliable evidence ⋯ not presented at trial"' establishing [2] '"that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence."'"" Lee v. Kemna, 213 F.3d 1037, 1039 (8th Cir.2000) ( per curiam )(other citations omitted).

> As to the "new evidence" requirement, "'[t]he evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson, 170 F.3d at 818 (quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir.1997) ( en banc ), cert. denied, 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 946 (1998)). Thus, the petitioner cannot make the required "new evidence" showing where for example, "the factual basis for the affidavits he relies on as new evidence existed at the time of trial and could have been presented earlier," Lee, 213 F.3d at 1039 (citing Meadows v. Delo, 99 F.3d 280, 282 (8th Cir.1996)), where "[t]here is no showing that [the witness] would not have testified at trial the same way that he did at the habeas hearing had he been asked the right questions," Johnson, 170 F.3d at 818, or where the allegation consists of no more than an assertion that trial counsel's failure to investigate the circumstances of the crime "probably caused" the petitioner's death sentence. Malone, 138 F.3d at 720 (noting that this allegation was insufficient to establish either a "gateway" claim under Schlup, 513 U.S. at 317, 115 S.Ct. 851, or to meet "the more exacting standard for a substantive claim of actual innocence"). The evidence must not only be "new," but "reliable," so that "a petitioner must support his claim of innocence with reliable new evidence, whether exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." Amrine, 128 F.3d at 1228 (citing Schlup, 513 U.S. at 322-24, 115 S.Ct. 851).

> ... More specifically, "[i]n deciding whether a petitioner has made the necessary showing of innocence, a federal court must make its own determination of whether the 'probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial' is sufficient to warrant consideration of the otherwise barred claims." Amrine, 128 F.3d at 1227 (quoting Schlup, 513 U.S. at 330-32, 115 S.Ct. 851).

Id. at 1159-60.

In Petitioner's case the Circuit Court of St. Francois County concluded that Amick's affidavit does not demonstrate clear and convincing evidence of Petitioner's innocence. As further stated by the circuit court, "[t]he only thing that Amick's affidavit may establish is that a juror would have to decide between Amick's story and Shannon Wingfield's testimony." Resp. Ex. T at 4. Further, "Amick's affidavit also does not address the fact that *the victim, Joseph Sickinger, identified [Petitioner] as the person who shot him*." Resp. Ex. T at 4 (emphasis added). This court agrees. As such, the court finds that by providing Amick's affidavit, or arguably the affidavits of any other individuals, Petitioner has not made a showing of actual innocence which would open the gateway to federal habeas review of his untimely § 2254 Petition. See Neuendorf, 110 F. Supp.2d at 1158-60.


C.      **Procedural Default:[5]**

While Petitioner generally alleged ineffective assistance of counsel in his second and fifth point on appeal, he made general allegations in this regard and did not make the specific allegations which

---

[5]      To the extent Respondent argues procedural default in terms of the escape rule rather than in terms of Petitioner's failing to raise claims according to State procedure, a federal court has "discretion to consider an issue of procedural default sua sponte." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).

he makes in Grounds 1, 3 and 5.[6]  In <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984), the United States Supreme Court held that "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  The Eighth Circuit held in <u>Flieger v. Delo</u>, 16 F.3d 878, 885 (8th Cir. 1994), that "a habeas petitioner must have raised both the factual and legal basis for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review." <u>See also</u> <u>Evans v. Luebbers</u>, 371 F.3d 438, 441 (8th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 902 (2005). "A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements.  Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review." <u>Flieger</u>, 16 F.3d at 885 (citations omitted). <u>See also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59 (1985); <u>Estes v. United States</u>, 883 F.2d 645, 647 (8th Cir. 1989).

As the ineffective assistance of counsel claims made by Petitioner in his State appeal were general and conclusory allegations and as these claims differ from the claims which he makes in his § 2254 Petition, the court finds that Petitioner has procedurally defaulted Grounds 1 and 3 and Ground 5 to the extent it alleges ineffective assistance of counsel. As such, the court finds that Petitioner has procedurally defaulted these grounds for relief.  To the extent that Petitioner's Traverse argues cause and prejudice and/or actual innocence to excuse his procedural default, the court has found above that Petitioner has not established actual innocence.  Further, the court has found above

---

[6]    In Ground 5 Petitioner alleges both ineffective assistance of counsel and a denial of due process by the trial court at sentencing.

that conduct on the part of appellate counsel did not prejudice Petitioner. The court finds, therefore, in the alternative, that Petitioner has failed to establish cause and prejudice or actual innocence to excuse his procedural default of Grounds 1and 3 and Ground 5 to the extent it alleges ineffective assistance of counsel, and that habeas relief should, therefore, be denied on the basis of these Grounds.

## IV.
## COGNIZABILITY

The court will, alternatively, consider whether the grounds for relief which Petitioner raises in his §2254 Petition are cognizable pursuant to federal habeas review.

Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; the petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

Moreover, upon conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions.'" <u>Evenstad v. Carlson</u>, Slip Op. 05-1467 at 6 (8th Cir. Nov. 30, 2006). "To obtain habeas relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonably." <u>Id.</u> at 7 (citing <u>Buchheit v. Norris</u>, 459 F.3d 849, 853 (8th Cir. 2006), <u>petition for cert. filed</u>, Nov. 13, 2006 (No. 06-7775); <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1057 (8th Cir. 2000)). Moreover, where there is an absence of controlling Supreme Court precedent on an issue raised by a § 2254 petition, such issue is not cognizable pursuant to federal habeas review even if the federal court believes the state court's decision is incorrect based on State law. <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

For a federal court to review a claim considered by a state court based on an independent and adequate state procedural rule, a habeas petition must show cause and prejudice or evidence of actual innocence so that a miscarriage of justice would occur unless his claims are reviewed. <u>Schleeper v. Groose</u>, 36 F.3d 735, 737 (8th Cir. 1994). The Supreme Court has held that to establish a "miscarriage of justice" a habeas petitioner must "establish[] that under the probative evidence he has a colorable claim of factual innocence." <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992) (citing <u>Kuhlmann v Wilson</u>, 477 U.S.436, 454 (1986)). The standard for establishing actual innocence is that "[t]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'" <u>Id.</u> at 339 n.5 (quoting <u>Kuhlmann</u>, 477 U.S. at 455 n.17).

The Missouri appellate court held that the escape rule barred its consideration of the claims which were before it. Resp. Ex. E; Resp. Ex. I. "The escape rule operates to deny the right of appeal to a defendant who escapes justice." State v. Troupe, 891 S.W.2d 809 (Mo. banc 1995). See also Crawley v. State, 155 S.W.3d 836, 837 (Mo. App. 2005). A defendant who flees justice also loses the opportunity to seek post-conviction relief. Id. The escape rule can be used to dismiss post-conviction appeals whether or not the motion court reached the merits of the movant's claims. Crawley, 155 S.W.3d at 837. Whether to use the escape rule to dismiss an appellant's claims of error rests within the sound discretion of the appellate court. Harvey v. State, 150 S.W.2d 128, 129 (Mo. App. 2004). The relevant inquiry in applying the escape rule is whether the escape adversely affects the criminal justice system. Troupe, 891 S.W.2d at 811; Crawley, 155 S.W.3d at 837. If it so adversely affects the criminal justice system, dismissing the appeal or motion for post-conviction relief is appropriate. See Troupe, 891 S.W.2d at 811. The application of the escape rule does not violate a defendant's substantive due process rights. Id. at 811-12. However, the escape rule should not be used to dismiss challenges to errors that occurred post-capture, and does not apply to such claims of error. Robinson v. State, 854 S.W.2d 393, 396 (Mo. 1993) (en banc).

In Branch v. Turner, 37 F.3d 371, 373-75 (8th Cir. 1994), rev'd sub nom., Goeke v. Branch, 514 U.S. 115 (1995), the Eighth Circuit reviewed the history of Missouri's escape rule as follows:

> The Missouri Supreme Court first applied the fugitive dismissal rule more than one hundred years ago. See State v. Carter, 11 S.W. 979 (Mo.1889). In Carter, the court dismissed the appeal of a sentenced defendant who escaped after filing the appeal because the defendant's escape prevented the court from rendering an enforceable judgment and the court would not permit the fugitive to trifle with the court's operations in this way. Id. at 980. Since Carter, Missouri appellate courts have used the fugitive dismissal rule to protect themselves from defendants whose fugitive activity delays, disrupts, or distracts the courts' proper operation. See State v. Kearns, 743 S.W.2d 553, 554-55 (Mo. Ct. App.1987). In recent years, the Missouri appellate courts have expanded the rule to dismiss the appeals of convicted defendants who failed to appear for sentencing, but were returned to the trial court and sentenced

before filing an appeal. See, e.g., id. (dismissing defendant's appeal after defendant's six-year absence from trial court caused administrative complications in appellate court and would prejudice state on retrial); State v. Wright, 763 S.W.2d 167, 168 (Mo.Ct.App.1988) (dismissing defendant's appeal after defendant's five-month flight delayed filing of the appeal). Missouri appellate courts recognize that the fugitive dismissal rule's use discourages unlawful flight, promotes the dignity of appellate court proceedings, and preserves respect for the legal system. Robinson v. State, 854 S.W.2d 393, 395 (Mo.1993) (en banc); Wright, 763 S.W.2d at 168.

Upon addressing Petitioner's direct appeal including the issue raised in Petitioner's Ground 4, the Missouri appellate court noted that Petitioner had fled on the last day of trial; that a *capias* warrant was issued; that the case continued in absentia; that the jury rendered a verdict against Petitioner; that Petitioner was apprehended six weeks later; and that he was sentenced thereafter. The Missouri appellate court also considered that dismissing an appeal under the escape rule is appropriate where the escape adversely affects the criminal justice system; that Petitioner's escape and six week absence resulted in a six-month delay between conviction and sentencing; that it resulted in a *capias* warrant being issued and the enlistment of law enforcement officers; and that, therefore, Petitioner's escape adversely affected the criminal justice system. Resp. Ex. E at 2-3. Likewise, upon considering the appeal of Petitioner's Rule 29.15 motion, including the issues of Petitioner's claims of ineffective assistance of counsel, the Missouri appellate counsel cited its findings in Petitioner's direct appeal in regard to the application of the escape rule to Petitioner.

The court finds that, upon addressing the issues before it in both Petitioner's direct appeal and the appeal of his Rule 29.15 motion, the Missouri appellate court relied upon and applied State law. As such, this court may not re-examine the decisions of the Missouri appellate court in Petitioner's direct appeal and appeal of his Rule 29.15 motion. See Poe, 39 F.3d at 207. Indeed, the Missouri appellate court considered the requirements for application of the escape rule and found that those were present. This court notes that the claims which were before the Missouri appellate court arose

prior to Petitioner's capture.[7] Thus, upon interpreting and applying State law to Petitioner's case, the Missouri appellate court did not err. See Higgins, 991 F.2d at 442; Jones v. Armontrout, 953 F.2d at 405. The court finds, therefore, that to the extent the Missouri appellate court considered issues raised in Petitioner's § 2254 Petition and concluded that the escape rule applied, those issues are not cognizable pursuant to federal habeas review. To the extent that Petitioner raises issues not addressed by the Missouri appellate court, this court need not address the cognizability of such issues as these issues are procedurally defaulted, Sweet, 125 F.3d at 1149, and as Petitioner's § 2254 Petition is untimely .

## V.
## CONCLUSION

For the reasons more fully set forth above the court finds that the § 2254 Petition filed by Petitioner is untimely. The court further finds, alternatively, that the issues raised by Petitioner are procedurally defaulted and/or not cognizable pursuant to federal habeas review. As such, the court finds that the § 2254 Petition filed by Petitioner should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

---

[7] Petitioner did not allege before the Missouri appellate court as he does in Ground 5 either that he was denied effective assistance of counsel because counsel failed to assure that he was granted allocution or that he was denied due process because the sentencing court failed to insure that he was represented by counsel at sentencing.

31

**IT IS HEREBY ORDERED** that the First Amended § 2254 Petition filed by Petitioner is **DISMISSED**, with prejudice. Doc. 14

**IT IS FURTHER ORDERED** that t for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>1st</u> day of  June, 2007.